IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ACACIA P.,[1]                                6:20-CV-02161-BR

        Plaintiff,                           OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

**KEVIN KERR**
Kerr Robichaux & Carroll
PO Box 14490
Portland, OR 97293
(503) 255-9092

        Attorneys for Plaintiff

**SCOTT ASPAUGH**
Acting United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

        [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**WILLY LE**
Acting Regional Chief Counsel
**HEIDI TRIESCH**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3748

      Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Acacia P. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

      Plaintiff filed applications for DIB and SSI on May 2, 2018, alleging a disability onset date of May 1, 2018.  Tr. 186, 191.[1] The applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on January 8,

---

      [1] Citations to the official transcript of record filed by the Commissioner on May 27, 2021, are referred to as "Tr."

2 - OPINION AND ORDER

2020.  Tr. 29-59.  At the hearing Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on January 30, 2020, in which she found Plaintiff is not entitled to benefits.  Tr. 15-26. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on October 8, 2020, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on July 13, 1991.  Tr. 186.  At the time of the hearing Plaintiff was 28 years old and had completed three years of college.  Tr. 36.  Plaintiff alleges disability due to anxiety, post-traumatic stress disorder (PTSD), and a depressive disorder.  Tr. 61.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 20-22.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate the

inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it

supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509,

404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work the claimant has done in the past.  20 C.F.R.

§ 404.1520(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found although Plaintiff worked after her May 1, 2018, alleged onset date, the "work activity did not rise to the level of substantial gainful activity."  Tr. 17.

At Step Two the ALJ found Plaintiff has the severe impairments of PTSD, depression, an eating disorder, "cigarette nicotine dependence," "cannabis use disorder (moderate)," and borderline personality disorder.  Tr. 18.  The ALJ found Plaintiff's obesity and dissociative identity disorder are not "severe, medically determinable impairments."  *Id*.

7 - OPINION AND ORDER

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 18.  The ALJ found Plaintiff has the RFC to perform "a full range of work at all exertional levels" with the following limitations:

> [Plaintiff] can apply commonsense understanding, remembering and carrying out short and simple written or oral instructions, consistent with Level 2 reasoning, that can be learned in 30 days or less.  [Plaintiff] is capable of frequent interactive contact with supervisors and co-workers but only occasional interactive contact with the public.

Tr. 19.

At Step Four the ALJ found Plaintiff cannot perform her past relevant work.  Tr. 25.

At Step Five the ALJ found Plaintiff can perform other work that exists in significant numbers in the national economy. Tr. 26.  Accordingly, the ALJ concluded Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) partially rejected the opinion of Erika Patterson, Ph.D., treating psychologist; and (3) partially rejected the opinions of Irmgard Friedburg, Ph.D., reviewing psychologist, and James Buskirk, M.D., reviewing

8 - OPINION AND ORDER

psychiatrist.

## I.    Plaintiff's Testimony

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quotation omitted).  The claimant need not show the "impairment could reasonably be expected to cause the severity of the symptom . . . alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [the] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)

(same).  General assertions that the claimant's testimony is not
credible are insufficient.  *Parra v. Astrue*, 481 F.3d 742, 750
(9th Cir. 2007).  The ALJ must identify "what testimony is not
credible and what evidence undermines the claimant's complaints."
*Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the hearing that she is unable to
work due to anxiety, PTSD, depression, dissociation, and
paranoia.  Specifically, Plaintiff stated she has "anxiety every
day" and suffers panic attacks "in lines," "sometimes just going
outside," and when she has to things such as oral presentations
for school.  Tr. 42.  Plaintiff testified she "dissociate[s]
every day."  Tr. 44.  When she dissociates she "struggle[s] with
continuity in thoughts and identity."  Tr. 43.  For example, when
she is dissociating she will not be able to "read or understand
something.  [She will] regress into a younger age, or . . . will
have explosive emotions."  Tr. 43.  She feels "like [she is] in a
fog and . . . lose[s] time.  [She has] lost days before."  *Id*.
Plaintiff testified she has passive suicidal thoughts "75% of the
time . . . [and] active suicidal thoughts maybe 20% of the time."
Tr. 44.  Plaintiff's depression can "make[] it extremely hard to
get out of bed" or to "care about hygiene."  Tr. 44.  Plaintiff
stated she had not showered in three months at the time of the
hearing.  *Id*.  Plaintiff testified she often has flash backs at
night that keep her from sleeping.  Tr. 44.  "There are parts of

[her] that are terrified of [her] bed and sleeping in general."
*Id*. As a result, Plaintiff "commonly go[es] 48 hours without
sleeping, and . . . when a depressive episode hits, [she will]
commonly sleep for 18 hours." Tr. 45. Plaintiff stated her
mental-health issues have impacted "everything" about her ability
to go to class and to work on her degree. Tr. 45. Plaintiff
testified her therapist told her that her "symptoms were too
severe to only see her [therapist] for two hours a week, and so,
[her therapist is] recommending putting [Plaintiff] into a . . .
partial hospitalization at PeaceHealth Hospital." Tr. 45.

Plaintiff stated she has "good days" approximately "10% of
the time," when she can walk her dog, "get all of [her] studying
and all of her [homework] done all at once," go to the movies,
run errands, and "have a few interactions with others at school."
Tr. 46. Plaintiff has "worse days . . . about 20% of the time"
during which she is "catatonic or dissociative to the point
[that] [she has] memory losses or chunks gone." Tr. 46. On her
worse days Plaintiff becomes severely depressed and cannot "leave
[her] bed, becomes "too paranoid to leave [her] RV," and/or has
active suicidal ideation. *Id*. Plaintiff has "bad days . . .
about 70% of the time" when she has difficulties with hygiene,
sleeping, and regulating her emotions, and "regress[es] into
younger selves to the point [that she] [does not] recall how to
cook or [to] do other things for [herself]." *Id*. Plaintiff

11 - OPINION AND ORDER

testified she has "a lot of interpersonal issues [at work] [when she] either treat[s] [her] boss as a parent, or [her] best friend, or someone that's terrifying.  So, those relationships are difficult to manage."  Tr. 46.

Plaintiff stated she is able to maintain her 3.0 GPA by doing all of her reading and homework on her good days, taking classes online, and working with Disability Access Services that helps her to obtain "flexibility in attendance, homework, and testing."  Tr. 49.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Tr. 20.  The ALJ noted Plaintiff reported experiencing "bad" or "worse" days 95% of the time, during which her anxiety, paranoia, dissociation, and panic attacks made it difficult to leave the house or to accomplish tasks, but Plaintiff's treatment notes did not support that level of poor functioning.  For example, in June 2018 Plaintiff received three As and 1 C in her college coursework; in July 2018 Plaintiff successfully participated in a group presentation, began a summer class, and participated in an internship; and in August 2018 Plaintiff obtained a 4.0 GPA in her summer coursework as well as

a letter of recommendation from her internship.  Tr. 1312, 1323.

     In January 2019 Plaintiff's treating psychologist
Dr. Patterson reported Plaintiff had achieved "[s]ignificant
overall stability.  [She] has been able to remain in school, to
stabilize her romantic relationship, to reduce substance abuse,
and to increase motivation for change" in the two years that she
had been undergoing therapy with Dr. Patterson.  Tr. 1346.
Dr. Patterson, however, relocated "to an adjacent town" in late
2018, and, therefore, recommended Plaintiff transfer to another
therapist.  Plaintiff, however, did not continue therapy
immediately.  Specifically, in March 2019 Plaintiff reported to
Allison Dark, M.D., treating psychiatrist, that she was "doing
overall better since [she] stopped therapy."  Tr. 1391.  Dr. Dark
noted Plaintiff achieved a 4.0 in her classes and was invited to
speak at two conferences in April and May 2019.  On May 10, 2019,
Plaintiff reported to Dr. Dark that she had experienced a severe
depressive episode, was having difficulty getting to class and
doing homework, and was "losing her [driver's] license . . .
because she . . . had too many speeding tickets."  Tr. 1372.  On
September 9, 2019, Plaintiff resumed therapy and began seeing
Carrie Hall, L.P.C. intern.  Plaintiff reported having
"persistent suicidal ideation for many years" and having "a
rather severe episode" two weeks earlier.  Tr. 1586.  Plaintiff
also reported dissociation including "persistent memory issues

and the experience of 'shifting into different states.'"
Tr. 1587.  Nevertheless, Plaintiff stated she was "finishing
[her] BA and [had] been working in a genetics lab as well as
writing a research paper on the skin conditions of blue whales."
Tr. 1587.  The ALJ noted the record reflects Plaintiff shows
improved functioning and decreased symptoms when she regularly
takes her medication and participates in therapy.

In addition, although Plaintiff testified at the hearing
that her therapist told her that her "symptoms [are] too severe
to only see her [therapist] for two hours a week" and recommended
"putting [Plaintiff] into . . . hospitalization," the record does
not contain any evidence of such a recommendation.

The Court concludes on this record that the ALJ did not err
when she partially rejected Plaintiff's testimony regarding the
intensity, persistence, and limiting effects of his symptoms
because the ALJ provided clear and convincing reasons supported
by substantial evidence in the record for doing so.

**II.  Opinions of Treating and Reviewing Medical Professionals**

Plaintiff alleges the ALJ erred when she partially rejected
the opinions of Erika Patterson, Ph.D., treating psychologist;
Irmgard Friedburg, Ph.D., reviewing psychologist; and James
Buskirik, M.D., reviewing psychiatrist.

"Because plaintiff filed her application[] after March 27,
2017, new regulations apply to the ALJ's evaluation of medical

opinion evidence." *Christopher W. v. Comm'r*, No. 6:20-CV-01632-JR, 2021 WL 4635801, at *6 (D. Or. Oct. 7, 2021). "Under the [new] regulations, an ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "A prior administrative medical finding is a finding, other than the ultimate determination about [disability], about a medical issue made by . . . agency medical and psychological consultants at a prior level of review . . . in [a] claim based on their review of the evidence." 20 C.F.R. § 404.1513(a)(5). In addition, the new regulations rescinded SSR 06-03p in which the SSA "explained how [it] considers opinions and other evidence from sources who are not acceptable medical sources . . . . The [new] rules revised [this] polic[y]. . . . For example, in claims filed on or after March 27, 2017, the final rules state that all medical sources, not just acceptable medical sources, can make evidence that [it] categorize[s] and consider[s] as medical opinions." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2P 2017 WL 3928298, at *1 (S.S.A. Mar. 27, 2017).

"The ALJ must articulate and explain the persuasiveness of a [medical] opinion or prior finding based on 'supportability' and 'consistency,' the two most important factors in the evaluation.

*Christopher W.*, 2021 WL 4635801, at *6 (quoting 20 C.F.R. §§ 404.1520c(a), (b)(1)-(2)). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Id.* (quoting 20 C.F.R. § 404.1520c(c)(1)-(2)).

> The ALJ may, however, is not required, to explain how other factors were considered including the relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements.

*Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), (c)(3)-(5)). *But see* 20 C.F.R. § 404.1520c(b)(3)(when an ALJ finds two or more opinions about the same issue are equally supported and consistent with the record but not exactly the same, the ALJ must articulate how these "other factors" were considered).

**A.    Dr. Patterson**

On December 6, 2019, Dr. Patterson completed a Mental Residual Functional Capacity (MRFC) form in which she noted she had been Plaintiff's treating mental health care provider from December 12, 2016, through October 16, 2018.  Tr. 1491. Dr. Patterson stated at the time she was treating her Plaintiff suffered from "PTSD, complex with dissociation; persistent depressive disorder; binge eating disorder; [and] cannabis use

16 – OPINION AND ORDER

disorder, moderate." *Id*. Dr. Patterson noted at the time she
was treating her Plaintiff had symptoms of hypervigilance, severe
anxiety, chronic depression, being eating, poor concentration,
hypersomnia, sleep disturbance, "information processing
difficulties," "worthlessness, guilt," and "weight + body image
disturbance." *Id*. Dr. Patterson opined Plaintiff has marked
limitation in thirteen out of fourteen areas of mental
functioning including the "ability to work in coordination with
or proximity to others without being distracted by them," the
"ability to accept instructions and respond appropriately to
criticism from supervisors," the "ability to get along with
coworkers or peers without distracting them or exhibiting extreme
behaviors," and the "ability to understand, remember, and apply
information." Tr. 1492-93. Dr. Patterson stated Plaintiff is
moderately limited in her ability to interact appropriately with
the general public. Dr. Patterson also stated she would expect
Plaintiff to need to take unscheduled breaks of ten-to-sixty
minutes two or three times daily "from even a simple, routine
job." Tr. 1494. Finally, Dr. Patterson noted she would "expect
[Plaintiff] to miss up to 16 hours . . . or more per month from
even a simple, routine job." *Id*.

         The ALJ found Dr. Patterson's opinion to be "not
persuasive." Tr. 23. The ALJ noted Dr. Patterson had not
treated Plaintiff for over one year at the time she offered her

opinion.  In addition, Dr. Patterson had treated Plaintiff for
almost two years, but only five months of that time occurred in
the relevant period and during which Plaintiff reported
significant improvement in her symptoms.  The ALJ noted
Dr. Patterson's opinion was not supported by her treatment notes
during the relevant period.  For example, during the five months
of the relevant period that Dr. Patterson treated her, Plaintiff
received three As and 1 C in her college coursework, successfully
participated in a group presentation, participated in an
internship, obtained a 4.0 GPA in her summer coursework, and
received a letter of recommendation from her internship.
Tr. 1312, 1323.  In May 2018 Plaintiff reported to Dr. Patterson
that she had "significant progress in academic functioning, with
stable high grades, and ability to ask for help from professors.
Tr. 1286.  In June 2018 Plaintiff reported she was "no longer
paranoid when alone," was "return[ing] to learning mode in
academics," and was "more able to process information."
Tr. 1300.  In August 2018 Plaintiff reported "feeling great . . .
[and] describe[ed] [a] sense of being at peace; no turmoil; a
different level of healed."  Tr. 1321.  Plaintiff advised
Dr. Patterson that she was able "to interact with her mother
without activation [and] to cope with significant financial
strain without decompensating."  *Id.*  At her last visit with
Dr. Patterson in October 2018 Plaintiff reported "overall

stability" and "overall taking care of [herself]."  Tr. 1341.
Plaintiff reported "decreased overall dissociation" and
"processed significant overall progress across areas since
entering therapy."  *Id*.  Dr. Patterson noted "significant
positive trends in recovery."  *Id*.

On this record the Court concludes the ALJ did not err
when she partially rejected Dr. Patterson's opinion because the
ALJ provided clear and convincing reasons for doing so based on
substantial evidence in the record.

**B.   Reviewing Medical Professionals**

On October 9, 2018, Dr. Friedburg reviewed the record
and completed an MRFC in which she found Plaintiff is moderately
limited in her ability to understand, to remember, and to carry
out detailed instructions; to maintain attention and
concentration for extended periods; to interact appropriately
with the general public; to get along with coworkers or peers
without distracting them or exhibiting behavioral extremes; and
to respond appropriately to changes in the work setting.  Tr. 68-
70.  Specifically, Dr. Friedburg stated Plaintiff is "capable
[of] interacting appropriately with supervisors" and of
"occasional interaction with coworker[s] and the general public
due to reported PTSD sx affecting relationships."  Tr. 70.
Dr. Friedburg found Plaintiff is not significantly limited in any
other areas of mental functioning.

19 - OPINION AND ORDER

On February 14, 2019, Dr. Buskirk reviewed the record
and completed a MRFC in which he found Plaintiff is moderately
limited in her ability to understand, to remember, and to carry
out detailed instructions; to maintain attention and
concentration for extended periods; to interact appropriately
with the general public; to get along with coworkers or peers
without distracting them or exhibiting behavioral extremes; and
to respond appropriately to changes in the work setting. Tr. 98-
100. Specifically, Dr. Buskirk stated Plaintiff is "capable [of]
interacting appropriately with supervisors" and of "occasional
interaction with coworker[s] and the general public due to
reported PTSD sx affecting relationships." Tr. 100. Dr. Buskirk
found Plaintiff is not significantly limited in any other areas
of mental functioning.

The ALJ found the opinions of Drs. Friedburg and
Buskirk to be "somewhat persuasive" and incorporated many of
their assessed limitations into Plaintiff's RFC. Tr. 23. The
ALJ, however, found Plaintiff is capable of frequent interaction
with coworkers on the grounds that Plaintiff successfully
completed a work-study job, and internship, and group projects.

On this record the Court concludes the ALJ did not err
when she partially rejected the opinions of Drs. Friedburg and
Buskirk because the ALJ provided clear and convincing reasons for
doing so based on substantial evidence in the record.

20 - OPINION AND ORDER

**<u>CONCLUSION</u>**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 14th day of February, 2022.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge

21 - OPINION AND ORDER